WO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

United States of America,

Plaintiff,

v.

$8,900.00 in US Currency,

Defendant.

No. CV-25-03851-PHX-DWL

**ORDER**

Pending before the Court is Plaintiff's motion for default judgment. (Doc. 9.) For the reasons that follow, the motion is granted.

**BACKGROUND**

In April 2025, Postal Inspectors and Task Force Officers ("Inspectors") of the United States Postal Inspection Service at the Phoenix Processing and Distribution Center in Phoenix, Arizona, began investigating individuals responsible for trafficking in narcotics and narcotics proceeds via the U.S. Mail between Arizona and Indiana. (Doc. 1 ¶ 1.) On May 8, 2025, Inspectors identified a suspicious United States Postal Service ("USPS") Priority Mail Express parcel bearing USPS tracking number ER 140 230 150 US (the "subject parcel"). (*Id.* ¶ 2.) "The subject parcel had a handwritten label addressed to 'Consuelo Sanchez, PO Box 14147, Phoenix, AZ 85063' with a return address of 'Ray Pritchard, 837 Ritterskamp Avenue, Vincennes, Indiana, 47591.'" (*Id.* ¶ 6.) "The law enforcement database search indicated the sender Ray Prichard was not associated with the return address. Additionally, the postal carrier was not familiar with the name Ray

Pritchard, and there were no COA records on file for the sender." (*Id.* ¶ 10.) "Address verification with the Post Office indicated that the recipient known to receive mail at the return address does not have the last name 'Pritchard.'" (*Id.* ¶ 11.)

On May 8, 2025, narcotics detection canine "Eero" "found and sniffed the corner of the subject parcel, his breathing became slow and deep and his movements rigid and focused. Eero alerted to the subject parcel . . . ." (*Id.* ¶¶ 14-22.)

"On May 9, 2025, Inspectors sought and received a federal search warrant for the subject parcel. Later the same day, Inspectors executed the warrant. Inside of the subject parcel the Inspectors found white cardboard pieces and a vacuum sealed plastic bag. Concealed inside the vacuum sealed bag was the defendant property, consisting of loose U.S. currency totaling $8,900." (*Id.* ¶¶ 23-25.) "People transporting drugs or drug proceeds in parcels often conceal drugs or drug proceeds within tightly-wrapped or vacuum-sealed bundles. Drug traffickers package items in this manner in an attempt to avoid detection by trained narcotics canines." (*Id.* ¶ 29.)

"On May 9, 2025, an individual who identified himself as Larry Sanchez called the Post Office to inquire about two Priority Mail Express ('PME') envelopes EI 680 219 765 US and ER 10 230 150 US. Mr. Sanchez stated the packages had not been delivered to him and wanted to know whether there was anything wrong with them. When asked what the mailings contained, he did not specify the contents but indicated PME envelope EI 680 219 765 US was worth $250.00 and the subject parcel, PME package ER 10 230 150 US, was valued at $60.00. PME envelope EI 680 219 765 US contained $3,400 concealed in the pages of two magazines and bore a handwritten label with the same delivery address as the subject parcel and a return address in Indiana." (*Id.* ¶¶ 31-33.)

"Postal business records revealed seven prior suspicious Priority Mail Express parcels that originated in various Indiana cities delivered to PO Boxes 14147 and 14033, Phoenix, AZ (both held by Consuelo Sanchez) between February 2025 and April 2025. The mailings were not intercepted by Postal Inspectors but are believed to have contained narcotics proceeds based upon characteristics including origin, destination, address

information, size and weight." (*Id.* ¶ 38.)

"On July 18, 2025, the USPIS Asset Forfeiture Unit received written correspondence from Eah Pritchard, claiming ownership of defendant property. . . . Pritchard stated in his claim that he sent the defendant property to his sister for a friend's funeral. Pritchard's claim listed an Orlando, Florida, address. However, the subject parcel was mailed from Princeton, Indiana, and was destined for Phoenix, Arizona." (*Id.* ¶¶ 42-45.) "Seven similar claims were filed using the same address that Pritchard listed. USPIS personnel noted the language used on the seven claims was similar, the claimants did not provide a social security number, and each claim used the last name of the 'seized from' party that was published in the online ad notice." (*Id.* ¶ 46.) "Law enforcement database research was conducted for the address used by Pritchard, 4150 Eastgate Drive, Apt. 6101, Orlando, FL. Eah Pritchard was not a name associated with the address." (*Id.* ¶ 51.)

On October 16, 2025, Plaintiff filed the verified complaint for forfeiture *in rem*. (Doc. 1.) Two weeks later, a warrant for the arrest of the defendant property issued. (Doc. 3.) The United States Marshals Service seized and took possession of the currency on November 17, 2025. (Doc. 4.)

On January 30, 2026, Plaintiff filed a notice that service had been executed pursuant to Rule G(4) of the Federal Rules of Civil Procedure Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims by posting "a notice of forfeiture on an official government internet site (www.forfeiture.gov) for at least thirty consecutive days, beginning October 26, 2025, and ending November 24, 2025." (Doc. 5.)

On May 18, 2026, no response to the complaint having been filed, Plaintiff filed an application for entry of default "regarding the interests of Mr./Ms. Flickering, Eah Pritchard, Ray Pritchard, Larry Sanchez, Consuelo Sanchez, and all others in defendant $8,900.00 in United States Currency." (Doc. 7.) The following day, the Clerk entered default. (Doc. 8.)

On October 20, 2026, Plaintiff filed the pending motion for default judgment. (Doc. 9.) No response has been filed and the time to respond has expired.

## ANALYSIS

I. Forfeiture Procedures

Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions governs forfeiture actions *in rem*.[1]

Rule G(2) states that the complaint must:

(a) be verified;

(b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue;

(c) describe the property with reasonable particularity;

(d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed;

(e) identify the statute under which the forfeiture action is brought; and

(f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

The complaint in this action conforms in all respects. (Doc. 1.)

Next, Rule G(3) mandates a warrant and supplemental process. Those procedures were followed here. (Docs. 3, 5.)

Next, Rule G(4) sets forth the notice requirements, which include notice by publication as well as notice to known potential claimants. When the government knows the identity of the property owner, the Due Process Clause of the Fifth Amendment "requires the Government to make a greater effort to give him notice than otherwise would be mandated . . . ." *United States v. Real Prop.*, 135 F.3d 1312, 1315 (9th Cir. 1998); *United States v. $296,000.00 in U.S. Currency*, 2012 WL 3260442, *3-4 (E.D. Cal. 2012). The government must provide notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). Rule G(4)(b)(iii)(A) likewise provides that "[t]he notice must be sent by means

[1] *See also* 21 U.S.C. § 881; 18 U.S.C. § 981.

reasonably calculated to reach the potential claimant."[2] Here, Plaintiff complied with its statutory notice obligations by executing process against the defendant property, sending direct written Notice of Forfeiture to all persons believed to have an interest in the defendant property, including Eah Pritchard, Ray Pritchard, Mr./Mrs. Flickering, Consuelo Sanchez and Larry Sanchez, and notifying all others via publication.

## II. Default Judgment Standard

The "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The following factors, known as the *Eitel* factors, may be considered when deciding whether default judgment is appropriate: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether the default was due to excusable neglect, and (7) the policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"[T]he general rule" for default judgment purposes "is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "The district court is not required to make detailed findings of fact." *Id.* "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

## III. The First, Fifth, Sixth, And Seventh *Eitel* Factors

In cases like this one, where no one aside from Plaintiff has participated in the litigation at all and the motion for default judgment is uncontested, "the first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, 2020 WL 1495210, *3 (D. Ariz. 2020).

---

[2] An optional way to provide notice is by serving a summons under Rule 4. Fed. R. Civ. P. 4(n)(1) ("The court may assert jurisdiction over property if authorized by a federal statute. Notice to claimants of the property must be given as provided in the statute or by serving a summons under this rule."). *See generally $296,000 in U.S. Currency*, 2012 WL 3260442 at *4 ("Notwithstanding the Supplemental Rules . . . the Government provides sufficient notice if such notice complies with Federal Rule of Civil Procedure 4 requirements.").

The first factor weighs in favor of default judgment. "[D]enying the motion would unduly prejudice the Government because it would be required to litigate this action even though no potential claimants have appeared to contest this forfeiture." *United States v. $27,800 in U.S. Currency*, 2017 WL 6345394, *4 (S.D. Cal. 2017).

The fifth and sixth factors weigh in favor of default judgment or are neutral. Because no potential claimant has participated, there is no dispute over material facts and no indication that default is due to excusable neglect.

The seventh factor generally weighs against default judgment, given that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Rule 55(b), which authorizes default judgments, "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177.

IV. <u>The Fourth *Eitel* Factor—The Amount Of Money At Stake</u>

Under the fourth factor, the Court considers the amount of money at stake in relation to the seriousness of the conduct at issue in the litigation. The amount at stake, $8,900, is not insubstantial, so this factor weighs against granting default judgment or is neutral. Nevertheless, courts have granted default judgments in similar cases. *$296,000.00 in U.S. Currency*, 2012 WL 3260442 at *7 ("[T]he sum of money in dispute here [$52,120.19] is not substantial enough to warrant the denial of the Government's motion.").

V. <u>The Second And Third *Eitel* Factors—Merits And Sufficiency</u>

That leaves the second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint. "These two factors are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Id.*

The Court agrees with Plaintiff that "[t]he second and third *Eitel* factors weigh strongly in favor of default judgment" because "[t]he facts alleged in the Complaint support the inference that the defendant property was involved in drug trafficking." (Doc. 9 at 4-

6.)

VI. Balancing The Factors

Having considered the *Eitel* factors, the Court concludes that default judgment is appropriate.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for default judgment (Doc. 9) is **granted**. The Clerk shall issue judgment in Plaintiff's favor accordingly and close this case.

Dated this 9th day of November, 2026.

Dominic W. Lanza
United States District Judge